**22-16711**

IN THE

# United States Court of Appeals

### FOR THE NINTH CIRCUIT

◆◆◆

In re: PG&E CORPORATION SECURITIES LITIGATION,

PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO, The Class;
YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND;
CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM; MID-JERSEY
TRUCKING INDUSTRY & LOCAL NO. 701 PENSION FUND,

*Plaintiffs-Appellants,*

—v.—

ANTHONY F. EARLEY, JR.; GEISHA J. WILLIAMS; NICKOLAS STAVROPOULOS; JULIE
M. KANE; CHRISTOPHER P. JOHNS; PATRICK M. HOGAN; BARBARA L. RAMBO;

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

JAMES M. WAGSTAFFE
FRANK BUSCH
WAGSTAFFE, VON LOEWENFELDT,
    BUSCH & RADWICK, LLP
100 Pine Street, Suite 2250
San Francisco, California 94111
(415) 357-8900

THOMAS A. DUBBS
CAROL C. VILLEGAS
JEFFREY A. DUBBIN
LABATON SUCHAROW, LLP
140 Broadway, 34th Floor
New York, New York 10005
(212) 907-0700

DARREN J. ROBBINS
ROBBINS GELLER RUDMAN
    & DOWD, LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058

WILLOW E. RADCLIFFE
ROBBINS GELLER RUDMAN
    & DOWD LLP
1 Montgomery Street, Suite 1800
San Francisco, California 94104
(415) 288-4545

*Attorneys for Appellants*

DAVID S. THOMASON; DINYAR B. MISTRY; LEWIS CHEW; FRED J. FOWLER; MARYELLEN C. HERRINGER; RICHARD C. KELLY; ROGER H. KIMMEL; RICHARD A. MESERVE; FORREST E. MILLER; BARRY LAWSON WILLIAMS; ROSENDO G. PARRA; ANNE SHEN SMITH; ERIC D. MULLINS; BARCLAYS CAPITAL, INC.; BNP PARIBAS SECURITIES CORPORATION; MORGAN STANLEY & CO. LLC; MUFG SECURITIES AMERICAS, INC.; WILLIAMS CAPITAL GROUP, L.P., AKA SIEBERT WILLIAMS SHANK CO., LLC; CITIGROUP GLOBAL MARKETS, INC.; J.P. MORGAN SECURITIES, LLC; MERRILL LYNCH, PIERCE FENNER & SMITH, INC, AKA B of A Securities, Inc.; MIZUHO SECURITIES USA LLC; GOLDMAN SACHS & CO; RBC CAPITAL MARKETS, LLC; WELLS FARGO SECURITIES, LLC; BNY MELLON CAPITAL MARKETS, LLC; TD SECURITIES (USA), LLC; C. L. KING & ASSOCIATES, INC.; GREAT PACIFIC SECURITIES; CIBC WORLD MARKETS CORP.; SMBC NIKKO SECURITIES AMERICA, INC.; U.S. BANCORP INVESTMENTS, INC.; MISCHLER FINANCIAL GROUP, INC.; BLAYLOCK VAN, LLC; SAMUEL A. RAMIREZ & COMPANY, INC.; MFR SECURITIES, INC.,

*Defendants-Appellees,*

—and—

PG&E CORPORATION,

*Defendant.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

SUMMARY OF THE ARGUMENT................................................................... 1

ARGUMENT........................................................................................................ 3

I.     THE STAY SHOULD BE REVERSED ...................................................... 3

     A.     The District Court's Stated Rationale for the Stay Is Insufficient ....... 3

     B.     The District Court Abused Its Discretion by Abdicating Its Duty to Rule on the Matters Within Its Exclusive Jurisdiction ................... 5

     C.     The Stay Falls Outside of the Court's Reasonable Discretion Because It Prejudices Plaintiffs-Appellants While Offering No Benefits........................................................................................ 8

II.    THIS COURT HAS JURISDICTION OVER THIS APPEAL ...................12

     A.     Jurisdiction Under *Moses & Blue Cross* ...........................................13

          1.     The Stay Has Placed Plaintiffs-Appellants "Out of Court"......15

          2.     Defendants-Appellees' "Indefinite" Argument Is Meritless ...............................................................................20

          3.     Plaintiffs-Appellants Need Not Provide Additional Evidence of Abdication by the District Court..........................23

     B.     Jurisdiction Under *Cohen*.................................................................25

III.   CONCLUSION ..........................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Mfrs. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*,
  743 F.2d 1519 (11th Cir. 1984).......................................................14

*Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery
  Center, Inc.*,
  490 F.3d 718 (9th Cir. 2007)....................................................*passim*

*Chicot Cnty. v. Sherwood*,
  148 U.S. 529 (1893)...............................................................6, 13

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)..............................................................13, 25

*Cohens v. Virginia*,
  19 U.S. 264 (1821)....................................................................13

*Davis v. Walker*,
  745 F.3d 1303 (9th Cir. 2014)...........................................14, 21, 25

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007)............................................. 3, 7-8

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)...................................................................18

*Hines v. D'Artois*,
  531 F.2d 726 (5th Cir. 1976)........................................................14

*Jacobson v. Persolve, LLC*,
  No. 14–CV–00735–LHK, 2014 WL 4090809
  (N.D. Cal. Aug. 19, 2014)............................................................18

*King v. Cessna Aircraft Co.*,
  505 F.3d 1160 (11th Cir. 2007).....................................................14

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*,
  460 U.S. 1 (1983)...............................................................13, 14

ii

*Rojas-Hernandez v. Puerto Rico Elec. Power Auth.*,
  925 F.2d 492 (1st Cir. 1991) ..............................................................14

*Silberkleit v. Kantrowitz*,
  713 F.2d 433 (9th Cir. 1983) ......................................................6, 7, 8

*Stanley v. Chappell*,
  764 F.3d 990 (9th Cir. 2014) ..........................................21, 23, 24, 25

*Tuller v. Tintri, Inc.*,
  No. 17-cv-05714-YGR, 2018 WL 4385652
  (N.D. Cal. Sept. 14, 2018) ................................................................6

*United Nat'l Ins. Co. v. R & D Latex Corp.*,
  141 F.3d 916 (9th Cir. 1998) ..............................................................4

*In re Worldcom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...............................................12

*Yong v. INS*,
  208 F.3d 1116 (9th Cir. 2000) ............................................................3

**Docketed Cases**

*In re Avon Prods. Inc. Sec. Litig.*,
  No. 1:19-cv-01420-MKV (S.D.N.Y.) ................................................19

*In re Baxter Int'l Inc. Sec. Litig.*,
  No. 1:19-cv-07786 (N.D. Ill.) ...........................................................19

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  No. 0:18-cv-00296-MJD-JFD (D. Minn.) .........................................19

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  No. 1:17-cv-01580-LGS (S.D.N.Y.) .................................................19

*Deka Inv. GmbH v. Santander Consumer USA Holdings Inc.*,
  No. 3:15-cv-02129-K (S.D. Tex.) ......................................................19

*Klein v. Altria Grp., Inc.*,
  No. 3:20-cv-00075-DJN (E.D. Va.) ..................................................19

*In re Mercury Interactive Corp. Sec. Litig*,
    No. 5:05-cv-3395 (N.D. Cal.) ............................................................12

*In re PG&E Corp.*,
    No. 19-30088 (Bankr. N.D. Cal.) ......................................................11

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    No. 1:17-cv-00304-WJM-NRN (D. Colo.) .......................................19

*Pearlstein v. Blackberry Ltd.*,
    No. 1:13-cv-07060-CM (S.D.N.Y.) ...................................................19

*In re Perrigo Co. PLC Sec. Litig.*,
    No. 1:19-cv-00070-DLC (S.D.N.Y.) ..................................................19

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
    No. 3:19-cv-04744-WHA (N.D. Cal.) ................................................19

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    No. 3:18-cv-06720-VC (N.D. Cal.) ...................................................19

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    No. 3:18-cv-02902-WHA (N.D. Cal.) ................................................19

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-cv-03679-SVW-AGR (C.D. Cal.) ......................................19

*In re Spectrum Brands Sec. Litig.*,
    No. 3:19-cv-00347-JDP (W.D. Wis.) .................................................19

**Statutes**

15 U.S.C. §78aa.................................................................................7, 16

**Other Authorities**

13 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris.
    § 3527 Exclusive Federal Court Jurisdiction (3d ed. Apr. 2022
    update)................................................................................................16

*Indefinite*, Merriam-Webster.com, https://www.merriam-
    webster.com/dictionary/indefinite (last visited May 29, 2023)........22

## SUMMARY OF THE ARGUMENT

The District Court has placed Plaintiffs-Appellants' federal securities claims against more than 40 Defendants—claims over which the District Court has exclusive jurisdiction—on a lengthy and indefinite hold, impermissibly deferring to an Article I court's eventual resolution of bankruptcy claims against just two Defendants. That process will take four to seven years at best. In doing so, the District Court has abdicated its duty to adjudicate this action and has effectively shut Plaintiffs-Appellants out of court, preventing them from pursuing their federal securities claims against numerous non-Debtor Defendants. That abdication, together with the complete absence of any legitimate justification for the Stay, warrants reversal of the Stay on the merits.

Defendants-Appellees' efforts to escape appellate review through misguided jurisdictional challenges must fail. Controlling law is clear: This Court has appellate jurisdiction because the lengthy and indefinite Stay severely prejudices Plaintiffs-Appellants and deprives them (and the class of harmed investors they represent) of the ability to have their claims against numerous non-Debtor Defendants heard by an appropriate federal forum with exclusive jurisdiction over those claims.

In *Blue Cross*, this Court explicitly held that stays lasting longer than 18 months are "sufficient to place the plaintiffs effectively out of court." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 723-24

1

(9th Cir. 2007).  Here, Plaintiffs-Appellants' uncontroverted expert evidence shows the PG&E bankruptcy proceeding to which the District Court has deferred is reasonably expected to take between ***four to seven years*** to complete.  *See* Opening Brief ("OB") at 17 n.9.  Indeed, that process could take far longer, as the Debtors have now filed their sixth motion to extend the claims objection deadline.  That motion (filed just 30 days ago) requests a 180-day further extension of the claims objection deadline to December 18, 2023.  Thus, four to seven years is a conservative estimate that far exceeds the 18-month threshold the *Blue Cross* court held constituted a "lengthy and indefinite stay[]" warranting appellate review.  *See Blue Cross*, 490 F.3d at 723-24.

The District Court issued its stay with no explanation except one terse paragraph asserting unspecified efficiencies.  However, the Stay creates no efficiencies here.  Quite the opposite.  The Defendants in this action include more than 40 parties that are not debtors in the PG&E bankruptcy case.  The Bankruptcy Court is an Article I court with no ability to issue decisions that bind the District Court.  Thus, no decision in the bankruptcy case could speed up or otherwise assist the resolution of this action with respect to the non-Debtor Defendants.  The only plausible effect of the stay is substantial, mounting prejudice.

Furthermore, the Plaintiffs-Appellants have a right to proceed in the District Court.  The District Court's deference to the judgment of an Article I court is an

improper abdication of its duty to decide the matters before it. The Stay not only prejudices Plaintiffs-Appellants by causing tremendous additional delay, but also unfairly jeopardizes their ability to collect any future judgment, as applicable insurance funds are spent on settlements with other parties in the bankruptcy.

## ARGUMENT

## I.  THE STAY SHOULD BE REVERSED

While a district court's stay ruling must be reviewed for abuse of discretion, this standard is "somewhat less deferential" than the abuse of discretion used in other contexts. *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000); *see also Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

Here, the District Court's decision to stay the case was an abuse of discretion in three distinct ways. **First**, it failed to assess the factors *Blue Cross* held a district court must consider when instituting a stay. As in *Blue Cross*, the District Court's failure to articulate any consideration of these factors requires that the Stay at least be vacated. **Second**, the only rationale the District Court provided for its decision merely evidences its abdication of its obligation to decide the matters exclusively before it. **Third**, the Stay falls outside the District Court's reasonable discretion because it prejudices Plaintiffs-Appellants while offering no benefits.

### A.  The District Court's Stated Rationale for the Stay Is Insufficient

The District Court's stay order provided only a terse explanation of its purported rationale: "[B]ecause of the overlap between the bankruptcy proceedings

5

and the instant securities fraud action, the Court STAYS the action as to the remaining director and officer defendants pending resolution of the bankruptcy proceedings . . . . A stay of the entire action 'is in the interest of efficiency' and would avoid proceeding on a piecemeal basis." 1-ER-3-4 [ECF No. 217 at 1-2] (citations omitted). As discussed in the Opening Brief, this explanation is facially deficient because it fails to properly explain the District Court's reasoning or that it considered the relevant factors that must be weighed in assessing the propriety of a stay. OB at 28-33. For example, the District Court did not explain which issues it believed overlapped or why it believed it would be more efficient for the Bankruptcy Court to reach those issues first. *Id.*

As *Blue Cross* held, a district court granting a stay is "required" to balance the factors relevant to "the interests of the parties, the public, and the court," and without a reasoned opinion showing the District Court conducted such inquiry, the matter must be, at least, remanded. *Blue Cross*, 490 F.3d at 724. Here, the perfunctory, conclusory assertion that certain issues might overlap and the District Court believes the Stay promotes efficiency does ***nothing*** to elucidate the basis of the District Court's reasoning and therefore cannot be upheld under controlling precedent. *Id.*; *see also United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir. 1998) ("[M]eaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning."). Defendants-Appellees provide

no explanation whatsoever as to why those deficiencies alone should not lead to the Stay being vacated and the matter remanded.

### B. The District Court Abused Its Discretion by Abdicating Its Duty to Rule on the Matters Within Its Exclusive Jurisdiction

The District Court's purported rationale was based on the "efficiency" of permitting the Bankruptcy Court to resolve claims against two Defendants before proceeding with claims against more than 40 other non-Debtor Defendants. As Plaintiffs-Appellants' Opening Brief explained, this rationale does not pass muster because the claims against the non-Debtor Defendants can ***only*** be litigated in the District Court—an Article III court—regardless of what occurs in the PG&E bankruptcy case. OB at 30-33. Thus, the rationale provided evidence that the Stay is an abdication by the District Court of its duty to decide the matters before it.

As thoroughly explained in the Opening Brief, the only case relied upon by the District Court for its supposition that efficiencies might arise is inapplicable on numerous grounds. *See* 1-ER-3-4 [ECF No. 217 at 1-2] (citing *Tuller v. Tintri, Inc.*, No. 17-cv-05714-YGR, 2018 WL 4385652, at *2 (N.D. Cal. Sept. 14, 2018)). That unpublished district court order dealt with Securities Act claims, and the "special circumstance" of pleadings that made it difficult to distinguish between debtors and non-debtors, and instituted a stay ***while the automatic stay in bankruptcy was***

*pending*.  OB at 30-33.  It was not based on vague concepts of efficiency.  Here, in contrast, the automatic stay in the PG&E bankruptcy has long since ended.[1]

The only way any efficiency could be gained even ***theoretically*** from the Stay is if the District Court were to defer to the Bankruptcy Court's eventual rulings (if any).  But to do so would be an improper abdication of the District Court's responsibility to decide the matters exclusively before it to an Article I court.  *Chicot Cnty. v. Sherwood*, 148 U.S. 529, 534-35 (1893) (district courts "cannot abdicate their authority [to] another jurisdiction.") (citations omitted).

For example, in *Silberkleit v. Kantrowitz* the Ninth Circuit confronted this exact issue—a district court staying Exchange Act claims based on a purported view that doing so would avoid duplicative litigation.  *See* 713 F.2d 433, 436 (9th Cir. 1983).  The stay was reversed on appeal, upon a finding that "the district court had no discretion to stay proceedings on these exclusively federal claims."  *Id.*[2]

---

[1] Defendants-Appellees do nothing to rehabilitate *Tuller*, as they merely note that in both cases there happen to be claims against both the debtor and non-debtor defendants, a fact that is true in virtually any securities case with a related bankruptcy.  Opp. at 31-33.

[2] Defendants-Appellees' only direct response to *Silberkleit* is that it dealt with an abdication to a ***state*** court as opposed to another ***federal*** court.  Opp. at 36.  But that distinction, for which Defendants-Appellees cite no authority, is irrelevant here. State courts have no authority to adjudicate federal securities claims that are exclusively the province of an Article III court—nor do Article I bankruptcy courts (with respect to claims against defendants other than a debtor).  The point the *Silberkleit* court made was that a federal district court could not defer to some other, inappropriate forum with respect to matters exclusively within its own jurisdiction.

The District Court's stay fails under *Silberkleit*.

**<u>First</u>**, the Bankruptcy Court, while a federal court, is an Article I court, not an Article III court. It is utterly illogical for an Article III court to defer to an Article I court with respect to federal securities claims against non-debtors that are subject to the exclusive jurisdiction of the Article III district courts. *See* 15 U.S.C. §78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this [1934 Act] or the rules and regulations thereunder.").

**<u>Second</u>**, the Bankruptcy Court is not a viable alternative forum. Defendants-Appellees' distinction between state courts and federal courts is premised on the flawed assumption that this matter is being litigated in an alternative federal forum. But that is untrue because the claims at issue in this action—claims against more than 40 non-Debtor Defendants—are ***not*** being (as they cannot be) litigated in the Bankruptcy Court.

Critically, numerous class members in this action did not file claims in the PG&E bankruptcy case. The Stay completely frustrates those litigants' ability to have their claims litigated against the non-Debtor Defendants in the District Court—claims that are not subject to review by the Bankruptcy Court. The District Court's assumption that efficiency can be gained through a separate litigation against only two Defendants is utterly indefensible at least as to these class members. As such, the Stay is an improper abdication of the District Court's duty. *See Dependable*

*Highway*, 498 F.3d at 1066-67 (reversing stay as "abuse of discretion" where there was a more than a "fair possibility" the stay would "work damage" to plaintiffs).[3]

### C. The Stay Falls Outside of the Court's Reasonable Discretion Because It Prejudices Plaintiffs-Appellants While Offering No Benefits

The Stay should be reversed as an abuse of discretion because the claimed reason for the Stay misunderstands the facts and law.

**First**, the Stay cannot create efficiency by resolving legal or factual issues. Thousands of putative class members are not parties to the PG&E bankruptcy case, and many had no real opportunity to timely file claims in that action. *See* OB at 40 n.14. Therefore, even if certain issues that overlap between the actions could be resolved by the bankruptcy against the Debtors, those issues will need to be revisited by the District Court, a duplication of effort that renders any supposed efficiency illusory. To reach a finding that there is any efficiency in waiting for the Bankruptcy Court to proceed ignores the rights of those litigants who are not parties thereto.

---

[3] While this Court need not search beyond the clear authority provided by *Silberkleit*, the facts here support the conclusion that the District Court's stay is an abdication of its duty to provide redress to the litigants before it. As noted in the Opening Brief (OB at 2), this action was filed in 2018 and has had two fully-briefed motions to dismiss pending since 2019. Yet, the District Court made no substantive rulings for years. Rather, it stayed the action on the last day before the District Court would be listed on the Civil Justice Reform Act compilations of cases pending for more than three years and motions pending for more than six months.

Defendants-Appellees have no compelling response to the injustice the Stay imposes on these absent class members. In a footnote, they state: "There is no evidence, however, that such absent class members exist." Opp. at 37 n.7. But only about 8,848 class members filed proofs of claim in the PG&E bankruptcy and, based on participation rates in reasonably comparable securities class action settlements, the expected number of claims in this action should be nearly ten times that figure. *See infra* at Section II.A.1.

**Second**, in its initial request for briefing on a potential stay, the District Court acknowledged that "Defendants expect that the ongoing bankruptcy claim process will affect, among other things, the size and potential damage claims of the putative classes in this action." 2-ER-119 [ECF No. 198]. This purported efficiency is arguably distinct from the prospect of the Bankruptcy Court actually deciding issues of law but is equally meritless to support the Stay. The entire notion of a class action is that claims can be litigated on behalf of the entire class—adding or reducing individual absent class members from a class action has no material effect on the overall use of judicial or party resources in the litigation of that action.

**Third**, as to all class members, any supposed efficiency of the Stay is illusory given the glacial pace of the PG&E bankruptcy case. The District Court action is well ahead of the bankruptcy claims reconciliation process, with motions to dismiss that are fully briefed and have been submitted for decision for over three years,

whereas the PG&E debtors have not yet initiated any substantive proceedings on the merits in connection with their bankruptcy cases. Waiting for the bankruptcy to resolve will take many years, as confirmed by the Plaintiffs-Appellants' uncontroverted expert evidence that the bankruptcy ADR Process alone is likely to take four to seven years to resolve, before any remaining claims reconciliation even begins. 2-ER-47-49 [ECF No. 203 at 12-14]; 2-ER-42-45 [ECF No. 203 at 7-10].

The Opposition contends in a footnote that "[n]either the District Court nor this Court is required to blindly accept Appellants' declarant's estimate of the likely duration of the stay, even if it was 'uncontradicted.'" Opp. at 23 n.4 (citations omitted). However, that case law merely reflects the uncontroversial proposition that a finder of fact need not accept evidence that is "contrary to his best judgment." *Id.* (citing *Maison v. Confederated Tribes of Umatilla Indian Reservation*, 314 F.2d 169, 173 (9th Cir. 1963), *disapproved of on other grounds by Puyallup Tribe v. Dep't of Game of Wash.*, 391 U.S. 392, 401 n.14 (1968)). Notably, Defendants-Appellees offer no alternative explanation of the likely length of the bankruptcy proceedings, and the Court should credit the only relevant explanation on that issue—Plaintiffs-Appellants' uncontroverted expert evidence. Moreover, the precise length of the stay is not the relevant issue. The issue is that the evidence submitted by Plaintiffs-Appellants strongly supports the clear conclusion that it will take years for the ADR and claims reconciliation processes in the PG&E bankruptcy case to be resolved—

far more than the 18 months *Blue Cross* found to be "sufficient" to find a stay "lengthy and indefinite."  490 F.3d at 724.

That the bankruptcy proceedings will last years is highlighted by the number of delays that have already arisen due to extensions sought in those proceedings to date, including recently on May 17, 2023, when the Reorganized Debtors filed their sixth motion to extend the claims objection deadline (this time to December 18, 2023).  *See* Motion for Entry of an Order Further Extending Deadline for the Reorganize Debtors to Object to Claims and for Related Relief, *In re PG&E Corp.,* No. 19-30088 (Bankr. N.D. Cal. May 17, 2023) Bankr. ECF No. 13745.  The hearing on this newest extension request is currently scheduled for June 7, 2023.

**<u>Fourth</u>**, Plaintiffs-Appellants will be prejudiced by this delay in ways that outweigh any potential (not to mention actual) efficiency benefits from the Stay.  As explained in the Opening Brief, there are limited insurance funds available to pay claimants, and those funds are being depleted.  Defendants-Appellants respond that Plaintiffs-Appellants do not have an "entitlement" to these insurance proceeds.  Opp. at 44.  This misses the point.  The claim is not that Plaintiffs-Appellants are being kept from that to which they are ***entitled***—this is not a conversion issue.  Rather, the issue is that as the insurance proceeds are used to satisfy claims in the PG&E bankruptcy case, the ability to pursue gainful recovery in the District Court action may be diminished, resulting in a real practical prejudice.  Making matters worse,

the PG&E debtors recently reached a policy settlement with numerous insurance carriers and used more than $100 million of insurance proceeds to settle certain derivative claims. *See* OB at 37-38.

Defendants-Appellees argue that Plaintiffs-Appellants have not cited case law showing this hardship constitutes "prejudice." *Id.* Their response is bizarre because hardship *is* prejudice—the only variable is severity. The question is whether the Stay is fair to the interests of the litigants, whatever those interests may be. Regardless, there are many cases establishing that stays frustrating collectability impose real hardship on plaintiffs. *E.g.*, Order re Lead Plaintiff's Motion to Lift PSLRA Stay on Discovery, *In re Mercury Interactive Corp. Sec. Litig*, No. 5:05-cv-3395, slip op. at 3 (N.D. Cal. Dec. 11, 2006) ECF No. 172 (lifting PSLRA discovery stay to avoid "the prejudice that would occur" if defendants "exhaust the D&O insurance limits"); *In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-306 (S.D.N.Y. 2002) (concerns that litigants would be prejudiced in collectability as others deplete corporate resources justified lifting PSLRA discovery stay).

## II. THIS COURT HAS JURISDICTION OVER THIS APPEAL

The District Court's stay is appealable under either of two doctrines of appellate jurisdiction. Defendants-Appellees' efforts to escape review of the Stay on jurisdictional grounds are meritless.

### A. Jurisdiction Under *Moses & Blue Cross*

First, this Court has jurisdiction over this appeal under *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 10 (1983) ("*Moses*"), and *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, 490 F.3d 718, 723 (9th Cir. 2007) ("*Blue Cross*").[4]

The rules permitting appellate review of certain stays are important protections for litigants. Those rules respect the long-standing principle that where a district court has jurisdiction over a matter, it generally does not have discretion to refuse to permit litigants to proceed. *See Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (district courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."); *Sherwood*, 148 U.S. at 534 (district courts are "bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority [to] . . . another jurisdiction.") (citations omitted).[5]

*Blue Cross* clarified that "lengthy and indefinite stays place a plaintiff effectively out of court[,] amount[] to a refusal to proceed to a disposition on the

---

[4] *Moses* is grounded in an exception to the final judgment rule that recognizes that stays may practically put a litigant out of court and because such appeals meet the requirements of the doctrine set forth in *Cohen v. Beneficial Industrial Loan Corp*. *See Moses*, 460 U.S. at 9–12 (citing 28 U.S.C. § 1291; *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)).

[5] Of course, there are narrowly tailored abstention doctrines, but neither the District Court nor any party has suggested any such doctrine applies here. *See OB at 27-28.*

merits[,]" and, therefore, are subject to appellate review. *Blue Cross*, 490 F.3d at 724.[6] Thus, *Blue Cross* recognized that the obligation to permit litigants to proceed encompasses both delays that will essentially permanently abdicate a district court's duties, as well as those that will—through lengthy delay—functionally deprive plaintiffs of their right to proceed in their chosen forum in a timely manner.[7]

The *Blue Cross* decision was expressly grounded on the risks to plaintiffs imposed by delay, clarifying that its reasoning is based on the delay itself, not estoppel concerns. The *Blue Cross* decision recognizes that a lengthy or indefinite stay amounts to a refusal to proceed to a disposition on the merits, holding that "[e]ven if litigation may eventually resume, such stays create a 'danger of denying justice by delay.'" *Blue Cross*, 490 F.3d at 724 (citation omitted). *Blue Cross*

---

[6] *Moses* held that stays may be subject to appellate review where they effectively render a litigant out of court because such stays—even if not permanent—fall within the statutory grant of appellate jurisdiction over final judgments. *Moses*, 460 U.S. at 9-10. In *Moses*, the stay had been granted to permit a state court to first decide an issue that would be binding upon the District Court. *Id.* However, *Moses* left some uncertainty as to whether appellate review of stays was limited to situations with such estoppel considerations or whether appellate jurisdiction requires a showing that a lower court had essentially permanently abdicated its duty to permit litigants to proceed.

[7] *Accord Davis v. Walker*, 745 F.3d 1303, 1308-09 (9th Cir. 2014); *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1165-69 (11th Cir. 2007); *Rojas-Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 493-95 (1st Cir. 1991); *Hines v. D'Artois*, 531 F.2d 726, 730 (5th Cir. 1976); *Am. Mfrs. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1523-24 (11th Cir. 1984).

further emphasized this point by noting ways in which delay may prejudice a plaintiff—*e.g.*, fading memories and risks to ultimate judgment collection. *Id.*

Defendants-Appellees do not dispute that "lengthy and indefinite" stays are subject to appellate review. Opp. at 20, 22. Nor do they dispute that the Stay at issue—lasting until PG&E's massive bankruptcy is fully resolved, which will take years—is "lengthy." *Id.* at 22-23; *see also* OB at 22 (explaining that this Stay has already lasted months, and uncontroverted experts demonstrate it is likely to last many more years). The propriety of appellate jurisdiction here is not subject to legitimate dispute.

Defendants-Appellees attempt to challenge the applicability of *Blue Cross* in three narrow ways: **first**, by arguing that despite the Stay Plaintiffs-Appellants are not "out of court" (Opp. at 21); **second**, by disputing whether the Stay is "indefinite" (*see id*. at 22); and **third**, by arguing that, notwithstanding *Blue Cross*, Plaintiffs-Appellants must make an additional showing (beyond delay) further demonstrating the Court's abdication of its duty to rule on the merits (*id.* at 23). These arguments fail.

## 1. The Stay Has Placed Plaintiffs-Appellants "Out of Court"

Defendants-Appellees argue that because the bankruptcy of just two Defendants is ongoing, Plaintiffs-Appellants (and class members) are not actually

"out of court," and thus the stay order falls outside the scope of *Blue Cross*. *Id*. at 21.

Defendants-Appellees' misconstrue the use of the term "out of court" as an invitation to probe whether a litigant may seek ***any*** redress, however minimal, in some forum. By Defendants-Appellees' estimation, the ability to pursue some claims against just two Defendants—out of more than 40—is sufficient to escape appellate review of the District Court's stay under *Blue Cross*. In their view, *Blue Cross* asks only whether a litigant has ***some*** avenue to litigate a subset of its claims. If the answer is yes, a "lengthy and indefinite" stay that locks the litigant out of its chosen Article III forum for years as to dozens of non-Debtor Defendants and thus "amounts to a refusal to proceed to a disposition on the merits[,]" *Blue Cross*, 490 F.3d at 724, nevertheless becomes inviolate.

The irrationality of Defendants-Appellees' alternative interpretation is evident on its face. Their interpretation would drive a hole through *Blue Cross*. That is highlighted by the fact the District Court, an Article III court, has exclusive jurisdiction over the securities claims[8] against ***more than 40 Defendants*** that are

---

[8] 15 U.S.C. §78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this [1934 Act] or the rules and regulations thereunder"); *see also* 13 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3527 Exclusive Federal Court Jurisdiction (3d ed. Apr. 2022 update) (Congress has "require[d] that the substantive right be prosecuted exclusively in the federal district courts").

entirely outside the scope of the bankruptcy proceedings of just two Defendants. *See* OB at 26. The Opposition does not point to a single case in which a district court stayed claims against non-debtors, within its exclusive Article III jurisdiction, in favor of the resolution of claims solely against debtors in a bankruptcy proceeding in an Article I court.

Even if one were to accept Defendants-Appellees' misinterpretation of "out of court" to mean that stays are not subject to *Blue Cross* review when the litigant has some access—however slight—to an alternative forum, this would be of no moment here, because Plaintiffs-Appellants **cannot** proceed in the PG&E bankruptcy against more than 40 non-Debtor Defendants. The only active avenue for redress in those proceedings is an ADR process from which Plaintiffs-Appellants have been explicitly excluded, and which, like the PG&E bankruptcy as a whole, involves only claims against the two PG&E debtors. 2-ER-48-50 [ECF No. 203 at 13-15]. "[D]enying justice by delay" is no less prejudicial merely because the plaintiff was offered some opportunity to settle, mediate, or arbitrage, no matter how unfair or illusory that offer may be. *Blue Cross*, 490 F.3d at 724 (citation omitted).

Defendants-Appellees' argument is especially nonsensical when one considers that Plaintiffs-Appellants, as court-appointed Lead Plaintiff in this securities action, have a fiduciary duty to represent the interests of other putative class members. The Supreme Court has recognized the "responsibility of named

plaintiffs to represent the collective interests of the putative class." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980); *see also Jacobson v. Persolve, LLC*, No. 14–CV–00735–LHK, 2014 WL 4090809 at *5 (N.D. Cal. Aug. 19, 2014) (similar). Putative class members who have not filed claims in the PG&E bankruptcy (to recover from the PG&E debtors)[9] are ***100% fully and completely*** "out of court" at this time. They have no present opportunity to litigate viable claims that Plaintiffs-Appellants have asserted in the District Court on their behalf against more than 40 Defendants.

In addition to those putative class members that filed claims in the PG&E bankruptcy case, it is obvious that many class members exist who did not file bankruptcy claims. There is a large gap between the quantity of claims filed in securities settlements of reasonably comparable scale and the number of claims filed in the PG&E bankruptcy. For example, Lead Counsel is aware of fourteen settlements of cases alleging Section 10(b) claims that (a) settled in 2022, (b) have resulted in a distribution of settlement proceeds (meaning there is public data on the

---

[9] There could be several reasons why claimants might choose not to file a claim in the bankruptcy action. For example, as Plaintiffs-Appellants noted in their Opening Brief, thousands of putative Class members were unable to timely file claims in bankruptcy court because PG&E gave inadequate notice of the bankruptcy bar date. OB at 40 n.14.

number of claims filed), and (c) settled for more than $10 million.[10]  Of those, the

median and mean numbers of claims submitted were 67,989 and 114,943

respectively, compared to approximately 8,848 securities claims (including

duplicates) in the PG&E bankruptcy case, meaning less than 10% of the expected

claimants in the securities action have filed bankruptcy claims against the PG&E

debtors.  *See* Bankr. ECF No. 13745.  Of course, the exact number here is imprecise

and irrelevant to the broader point that there are a vast number of class members

here who are not bankruptcy claimants.

For these reasons, the Court should reject Defendants-Appellees' argument

that *Blue Cross* is not implicated here.  Beyond being based on the false premise that

the Bankruptcy Court is a viable alternative forum, that argument also misconstrues

---

[10] *See, e.g.*, *Deka Inv. GmbH v. Santander Consumer USA Holdings Inc.*, No. 3:15-cv-02129-K, Dkt. No. 268-1 (S.D. Tex.); *In re Avon Prods. Inc. Sec. Litig.*, No. 1:19-cv-01420-MKV, Dkt. No. 102 (S.D.N.Y.); *Pearlstein v. Blackberry Ltd.*, No. 1:13-cv-07060-CM, Dkt. No. 840 (S.D.N.Y.); *In re Perrigo Co. PLC Sec. Litig.*, No. 1:19-cv-00070-DLC, Dkt. No. 338 (S.D.N.Y.); *In re Spectrum Brands Sec. Litig.*, No. 3:19-cv-00347-JDP, Dkt. No. 127 (W.D. Wis.); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 3:19-cv-04744-WHA, Dkt. No. 308-2 (N.D. Cal.); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 1:17-cv-00304-WJM-NRN, Dkt. No. 128-1 (D. Colo.); *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, Dkt. No. 405-2 (C.D. Cal.); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, No. 1:17-cv-01580-LGS, Dkt. No. 449 (S.D.N.Y.); *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, No. 3:18-cv-06720-VC, Dkt. No. 222-1 (N.D. Cal.); *SEB Inv. Mgmt. AB v. Symantec Corp.*, No. 3:18-cv-02902-WHA, Dkt. No. 436 (N.D. Cal.); *In re Baxter Int'l Inc. Sec. Litig.*, No. 1:19-cv-07786, Dkt. No. 78 (N.D. Ill.); *Klein v. Altria Grp., Inc.*, No. 3:20-cv-00075-DJN, Dkt. No. 325 (E.D. Va.); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 0:18-cv-00296-MJD-JFD, Dkt. No. 385 (D. Minn.).

the meaning of being "out of court," and would drive a massive hole through *Blue Cross*. That would be especially prejudicial here, where the District Court has exclusive jurisdiction over claims against more than 40 Defendants that are not debtors in PG&E's bankruptcy. For their claims against more than 40 Defendants that are not debtors, Plaintiffs-Appellants and many class members have no recourse in the PG&E bankruptcy, and thus, they are "out of court" under any rational interpretation of that phrase.

### 2. Defendants-Appellees' "Indefinite" Argument Is Meritless

Defendants-Appellees argue that *Blue Cross* addresses only stays that are both lengthy **and** indefinite, and that this Stay falls outside *Blue Cross* because it is not "indefinite." This argument fails for two reasons.

**First**, Defendants-Appellees' interpretation makes no sense given that an indefinite period of time is one that is unknown, while a lengthy period is one that has a set period of time. Indeed, in its first use of the term "indefinite," the *Blue Cross* court wrote that it was considering whether there is appellate jurisdiction over stays that "impose lengthy **or** indefinite delays." 490 F.3d at 723 (emphasis added). And while the *Blue Cross* court later used the phrase "lengthy and indefinite," there is no indication it intended to treat these terms as separate elements. *Id.* at 724. Nor would such an interpretation be consistent with this Court's express recognition in *Blue Cross* that stays lasting longer than 18 months are "sufficient to place the

plaintiffs effectively out of court[,]" a conclusion that has nothing to do with whether the stay is "indefinite." *Id.*

This Court generally has not interpreted *Blue Cross* to require any special showing of indefiniteness to justify appellate review. *See, e.g.*, *Stanley v. Chappell*, 764 F.3d 990, 995 (9th Cir. 2014) (recognizing appellate jurisdiction over stay orders that "impose a lengthy *or* indefinite delay") (emphasis added).[11]

Treating the term "indefinite" as an independent required element also would make no sense from a policy perspective. *Blue Cross* made its rationale clear: the Court was concerned with "denying justice by delay." 490 F.3d at 724 (citation omitted). That concern does not hinge on whether a delay is "indefinite," and given this Court's rationale, the use of the term "indefinite" can only reasonably be interpreted to refer to long stays regardless of whether their precise length is known. This can be demonstrated by hyperbolic example—a stay order lasting ninety-nine years and forty days is lengthy, but also "definite." Defendants-Appellees cannot contend that such a stay would avoid review under *Blue Cross* purely because it has a fixed period.

---

[11] Defendants' only other support for their alternative interpretation of *Blue Cross* is a stray quotation from *Davis*, 745 F.3d at 1309. *See* Opp. at 22. However, that line merely indicated that the stay at issue there *was* lengthy and indefinite, without providing any additional support for the notion that the term "indefinite" sets out a separate test or requirement beyond establishing that the stay is long in duration— and as noted, *Davis* placed weight on the presumption that the stay was entitled to appellate review based on its duration of more than 18 months.

21

**Second**, Defendants-Appellees' interpretation also falls apart because they offer no definition of "indefinite," a vague concept that *Blue Cross* did not define further. The fact that the Court did not define "indefinite" in detail supports the notion it never intended that term to take on independent significance.

The dictionary definition of "indefinite" refutes Defendants-Appellees' interpretation as well: the term refers to something (A) that is "not precise" or (B) "having no exact limits."[12] Here, the Stay—lasting until the bankruptcy proceedings resolve at some unspecified time in the future—meets either definition. The District Court provided no clarity as to which specific events in the bankruptcy proceedings must occur to mark the end of the Stay, there is absolutely no certainty as to when those events will occur (and Plaintiffs-Appellants' uncontroverted expert evidence establishes that they will not occur until many years in the future), and the actual time required to resolve the claims is largely in PG&E's hands, further adding to the uncertainty of when matters will be resolved. Thus, even if "indefinite" were an independent element, it would be readily satisfied here.

Defendants-Appellees insinuate that "indefinite" should be taken to mean "infinite" (Opp. at 22)—*i.e.*, that there is only *Blue Cross* review where the stay will never end. Such a rule would swallow both *Moses* and *Blue Cross* by conflating

---

[12] *Indefinite*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/indefinite (last visited May 29, 2023).

"indefinite" stays with permanent stays and injunctions. That notion also presupposes that "indefinite" is a separate requirement aimed at situations where the stay itself essentially ends the litigation by leaving it in limbo forever. That may have been a colorable argument *prior to Blue Cross*, when it was unclear whether the prejudice of delay was a proper basis on which to invoke the *Moses* appellate jurisdiction doctrine. But *Blue Cross* clarified that substantial delay is itself the policy concern at issue, not merely a complete abdication of any willingness to eventually rule. *Blue Cross*, 490 F.3d at 724. Moreover, that flawed interpretation is foreclosed by *Blue Cross*, where, as here, there was a condition precedent to the District Court taking up the issue again at some unspecified future time—there, the resolution of criminal proceedings against the defendants. *Id.*

### 3. Plaintiffs-Appellants Need Not Provide Additional Evidence of Abdication by the District Court

Relying exclusively on *Stanley*, Defendants-Appellants argue that delay is not a basis for appellate jurisdiction over a stay, and that an appellant must also make an additional showing regarding the court's "refusal to proceed to a disposition on the merits." Opp. 23 (quoting *Stanley*, 764 F.3d at 995). *Stanley* does not stand for such a rule but does require some analysis.

To accept Defendants-Appellees' interpretation of *Stanley* would be to accept that it fully overturned *Blue Cross*—which it clearly did not do. Rather, *Stanley* relies extensively on *Blue Cross* and does not hint at any intent to overturn it. The

very fact that made *Blue Cross* a landmark case was that it formally recognized that the imposition of a lengthy stay may *itself* interfere and may work injustice by delay sufficient to warrant appellate review of whether the district court's decision was an abuse of discretion. To graft a requirement onto *Blue Cross* also requiring some further showing of abdication reads *Blue Cross* out of the analysis entirely.

The proper interpretation of *Stanley* is that it merely speaks to an exception to *Blue Cross*—suggesting that where a stay ***promotes*** adjudication on the merits, *Blue Cross* does not permit appeal. This interpretation follows from the facts of *Stanley*. There, the stay was imposed following the district court's partial remand of a *habeas* petition to a state court and after the defendant had raised a challenge regarding the state court's adjudication of a competency proceeding. *Stanley*, 764 F.3d at 992. The federal *habeas* petition was subject to state-law exhaustion requirements—meaning that the district court could either stay and hold federal proceedings in abeyance to allow exhaustion of state remedies on precisely the same claims raised in federal court or dismiss the petition for lack of exhaustion. *Id.* On those facts, the decision to stay strongly showed a preference to decide the matter on the merits rather than "surrender jurisdiction of a federal suit to a state court." *Id.* at 995 (quoting *Moses H. Cone*, 460 U.S. at 10 n. 11). Thus, *Stanley* merely implemented a narrow exception to *Blue Cross*. That exception is inapplicable here.

24

Finally, even if one were to accept that *Stanley* requires a showing that the District Court's decision is grounded in an abdication of its duty to rule on issues before it, Plaintiffs-Appellants make that showing here. *See* Section I.B, *supra*.

## B. Jurisdiction Under *Cohen*

The Stay is also independently appealable under *Cohen*. 337 U.S. at 546. "To fall within the small class of collateral orders that may be immediately appealed under *Cohen*, the order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Davis,* 745 F.3d at 1309.

Defendants-Appellees' only challenges to the second element of that test tacitly concede that the other two elements are met for the reasons stated in the Opening Brief. Opp. at 24; OB at 23–25. On that second element, the Opposition argues that loss of a federal forum is not a sufficiently important issue to justify independent review under *Cohen.* Opp. at 24. But here the Stay has not only caused the loss of one Article III forum in favor of an equally valid alternative forum, it has caused the loss (for at least the lengthy duration of the Stay) of ***any*** viable forum to pursue these claims. The Bankruptcy Court is not a viable alternative forum for any claims other than those against the two PG&E debtors. As an Article I court, the Bankruptcy Court will not and cannot address Plaintiffs-Appellants' claims against

more than 40 non-Debtor Defendants, which claims will simply be sidelined for an indefinite period.

Furthermore, this Stay is an abdication of the District Court's duty to decide the matter before it, which is an independent basis to review the matter. *See* Section I.B.

## III.    CONCLUSION

For the foregoing reasons, and the reasons in the Opening Brief, this Court should reverse the decision below and remove the Stay.

Dated:  May 30, 2023                     Respectfully submitted,

                                         LABATON SUCHAROW LLP
                          By:    */s/ Thomas A. Dubbs*
                                 Thomas A. Dubbs
                                 Carol C. Villegas
                                 Jeffrey A. Dubbin
                                 140 Broadway
                                 New York, NY 10005
                                 212-907-0700
                                 tdubbs@labaton.com
                                 cvillegas@labaton.com
                                 jdubbin@labaton.com

                                 *Lead Counsel for Securities Lead*
                                 *Plaintiff-Appellant PERA and the Class*

                                 WAGSTAFFE, VON LOEWENFELDT,
                                   BUSCH & RADWICK, LLP

                                 James M. Wagstaffe (SBN 95535)
                                 Frank Busch (SBN 258288)
                                 100 Pine Street, Suite 725
                                 San Francisco, CA 94111
                                 415-357-8900
                                 wagstaffe@wvbrlaw.com
                                 busch@wvbrlaw.com

                                 *Liaison Counsel for the Class*

ROBBINS GELLER RUDMAN
  & DOWD LLP
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, CA 92101
619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Counsel for Securities Act*
*Plaintiffs-Appellants*

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
Thomas C. Michaud
79 Alfred Street
Detroit, MI 48201
313-578-1200
tmichaud@vmtlaw.com

*Additional Counsel for Securities Act*
*Plaintiffs-Appellants*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief conforms to all formatting and length requirements contained in Rule 32(a) of the Federal Rules of Appellate Procedure. The length of this brief is 6,499 words.

/s/ *Thomas A. Dubbs*
Thomas A. Dubbs
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Email: tdubbs@labaton.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Thomas A. Dubbs*
Thomas A. Dubbs
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Email: tdubbs@labaton.com